UNITED STATES DISTRICT COURT
EASTERN OF NEW YORK

------------------------------------------------------X

RONDESE HILTON-JONES

Plaintiff,

            -against-

THE COUNTY OF NASSAU, NEW
YORK; POLICE OFFICER "JIMMY";
POLICE OFFICER DOMINICK L.
CIMINO; POLICE OFFICER THOMAS
H. MULLIGAN; POLICE OFFICER
ROBERT D. PHANEUF; POLICE
OFFICER ERIC F. RIVERA; POLICE
OFFICER ANTHONY J. UVENA; AND
JOHN DOES ONE THROUGH
TWENTY, fictitious names, real names
unknown, but known to the Nassau
County Police Department, Bureau of
Special Operations, representing
individual police officers, in their
individual capacity, responsible for
inflicting excessive force set forth
below.

Defendants.

------------------------------------------------------X

Docket No:


**CIVIL COMPLAINT
and DEMAND FOR
JURY TRIAL**

      RONDESE HILTON-JONES ("Plaintiff" or "Mr. Hilton-Jones")

by and through his undersigned counsel, William P. Perniciaro, and

1

Robert M. Beecher, hereby files his Complaint against the Defendants THE COUNTY OF NASSAU ("Nassau"), NEW YORK; POLICE OFFICER JIMMY ("Officer Jimmy"); POLICE OFFICER DOMINICK L. CIMINO ("Officer Cimino"); POLICE OFFICER THOMAS H. MULLIGAN ("Officer Mulligan"); POLICE OFFICER ROBERT D. PHANEUF ("Officer Phaneuf"); POLICE OFFICER ERIC F. RIVERA ("Officer Rivera"); POLICE OFFICER ANTHONY J. UVENA ("Officer Uvena"); AND JOHN DOES ONE THROUGH TWENTY, alleged to have unlawfully deprived Plaintiff of his Civil Rights, and caused him damage, in violation of the Civil Rights Act of 1871, codified at 42 U.S.C. §1983 to 1988.

Plaintiff also files Pendant Claims, See 28 U.S.C. 1367(a)(Supplemental Jurisdiction of State Claims), under the New York State Law, against all the Defendants.

Plaintiff alleges as follows:

## I. <u>NATURE of ACTIONS</u>

1. On May 29, 2018 police officers (Cimino, Mulligan, Phaneuf, Rivera, Uvena, and John Doe) (the "Individual Defendants") working for Nassau, subjected Plaintiff to unreasonable and excessive force, false arrest and imprisonment, malicious prosecution, an unlawful seizure, denial of due process, denial of the right to petition his government for his grievance(s), and cruel and unusual punishment.

2. Thus Plaintiff files this action under the Civil Rights Act of 1871, later codified at 42 U.S.C. §§1983 to 1988 (in this case various "§1983" actions and a "§1985" conspiracy claim)

3. Specifically, §1983 (Civil Action for Deprivation of Rights), in pertinent part, provides:

> "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

Suit in equity, or other proper proceeding for redress …."

4.      Section 1985(2) (Obstructing justice; intimidating party, witness, or juror) and (3) (Conspiracy to Interfere with Civil Rights), in pertinent part, provides:

> (2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully … or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

> (3) "If two or more persons in any State or Territory conspire … on the highway … for the purpose of depriving … any person … of the equal protection of the laws, or of equal privileges and immunities under the laws … whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States,

> the party so injured or deprived may have an action for the recovery of damages occasioned by such

injury or deprivation, against any one or more of the conspirators.

5.    Plaintiff alleges the direct responsibility of the Individual Defendants under various constitutional theories; Bystander (also traditionally known as Failure to Intercede) and/or Supervisory liability; derivative ("Monell") fault of Nassau; the Deliberate Indifference of one or more of the Defendants; and conspiracy claims based in racial *animus* and interference with the due course of justice, all as set forth in §1983, §1985, and/or case law.

6.    The claims apply to each defendant in an individual and/or official capacity, or directly against Nassau.

7.    The Pendant Claims focus on New York State tort law of battery, false imprisonment and arrest, malicious prosecution, intentional and negligent infliction of emotional distress, negligent supervision, and *Respondeat Superior*.

8.    Plaintiff seeks compensatory and punitive damages, injunctive relief, pre-judgment interest, and attorney's fees.

## II.     JURISDICTION and VENUE

### a.     Subject Matter Jurisdiction

9.     The court has original Subject Matter Jurisdiction of this action

pursuant to 28 U.S.C. § 1331 which states the:

> "The district courts shall have original jurisdiction of
> all civil actions arising under the Constitution, laws,
> or treaties of the United States."

10.     This case arises under the laws of the United States in that it is

filed to obtain the remedy set forth in §1983 which expressly

deals with:

> "deprivation of any rights, privileges, or immunities
> secured by the [United States] Constitution and
> laws."

11.     The court also has original jurisdiction of this action pursuant to

28 U.S.C. § 1343(a)(3) which provides:

> "The district courts shall have original jurisdiction of
> any civil action authorized by law to be commenced
> by any person … [t]o redress the deprivation, under
> color of any State law, statute, ordinance, regulation,
> custom or usage, of any right, privilege or immunity
> secured by the Constitution of the United States or
> by any Act of Congress providing for equal rights of

citizens or of all persons within the jurisdiction of the United States."

12.    The court further has subject matter jurisdiction of Pendant Claims under 28 U.S.C. 1367(a)(Supplemental Jurisdiction of State Claims) which provides for:

> "jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

13.    The Pendant Claims arise out of the same core and/or nucleus of operative facts as the §1983 and §1985 actions.

### b.    Personal Jurisdiction

14.    The court has *in personam* jurisdiction over all the Defendants since all are domiciled or sited in the State of New York, and/or had continuous and systematic contacts with the State by virtue of their employment, and/or they committed the alleged wrongful actions in the State.

### c.    Venue

15.   Plaintiff predicates Venue on 28 U.S.C. § 1391(b), in that the defendants either reside in the Eastern District of New York and/or a substantial part of the events or omissions giving rise to the claim occurred in the district.

### III.   PREREQUISITES TO PENDANT CLAIMS

16.   On June 27, 2018, the Plaintiff duly served a Notice of Claim on Nassau for purposes of satisfying New York General Municipal Law §50(e) (Notice of Claim).

17.   On November 17, 2018 Nassau conducted a deposition (a "50-h Hearing") of the Plaintiff pursuant to New York General Municipal Law §50(h)(Examination of Claims).

18.   More than thirty (30) days have elapsed, giving Nassau time to evaluate the claim.

19.   No defendant has offered to adjust and/or settle this case.

20.   This action is commenced within one year and ninety days of the accrual of the Pendant Claims.

### IV.   THE PARTIES

### a.    Mr. Hilton-Jones (the Plaintiff)

21.    At all times relevant herein, the Plaintiff, Mr. Hilton-Jones was/is a resident of Nassau County, New York, and was subjected to unreasonable and excessive force by members of one or more of Individual Defendants acting in the scope of their employment by Nassau.

### b.    Nassau

22.    Nassau, at all times relevant herein, is a County and political subdivision, in New York State.

23.    Nassau, at all times relevant herein, employed the Individual Defendants working for the Nassau County Police Department ("NCPD"), Bureau of Special Operations ("BSO"), set forth below as public employees.

### c.    Police Officer Jimmy

24.    Police Officer Jimmy, at all times relevant herein, on information and belief, was a police officer working for the NCPD, BSO (Bureau of Special Operations).

25. After the Individual Defendants inflicted unreasonable and excessive force upon Plaintiff's person, he asked one of the officers to identify himself.

26. That officer would only identify himself as "Jimmy."

### d.     Officer Cimino

27. Officer Cimino, at all times relevant herein, on information and belief, was a police officer working for the NCPD, BSO.

28. Officer Cimino is an assisting police officer set forth papers provided by the NCPD.

29. On information and belief Officer Cimino was one of the police officers inflicting unreasonable and excessive force upon Plaintiff.

### e.     Officer Mulligan

30. Officer Mulligan, at all times relevant herein, on information and belief, was a police officer working for the NCPD, BSO.

31. Officer Mulligan is an assisting police officer set forth papers provided by the NCPD.

32.   On information and belief Officer Mulligan was one of the police officers inflicting unreasonable and excessive force upon Plaintiff.

### f.    Police Officer Phaneuf

33.   Officer Phaneuf, at all times relevant herein, was a police officer working for Nassau.

34.   Officer Phaneuf is the arresting officer set forth in a Felony Complaint dated May 30, 2018 filed against Plaintiff in the Nassau County District Court.

35.   On information and belief Officer Phaneuf was one of the police officers inflicting unreasonable and excessive force upon Plaintiff.

### g.    Officer Rivera

36.   Officer Rivera, at all times relevant herein, on information and belief, was a police officer working for the NCPD, BSO.

37.   Officer Rivera "assisted with paperwork" at set forth papers provided by the NCPD.

38.     On information and belief Officer Rivera was one of the police officers inflicting unreasonable and excessive force upon Plaintiff.

### h.     Officer Uvena

39.     Officer Uvena, at all times relevant herein, on information and belief, was a police officer working for the NCPD, BSO.

40.     Officer Uvena is an assisting police officer set forth papers provided by the NCPD.

41.     On information and belief Officer Uvena was one of the police officers inflicting unreasonable and excessive force upon Plaintiff.

### i.     JOHN DOE, Numbers One Through Ten

42.     The defendant, JOHN DOE NUMBERS ONE through TEN, represent individuals and/or entities which deprived Plaintiff of his civil rights or engaged in tortious acts, either intentionally, recklessly, with Deliberate Indifference, and/or negligently, as alleged in this Complaint.

43.    If discovery in this case discloses the true names of JOHN DOE

defendants, an appropriate motion will be made, or a stipulation

entered, to amend the caption and Complaint, to reflect the

identity and conduct of these currently unknown parties.

## V.    FACTUAL BACKGROUND

### a.    The Individual Defendants Seize the Plaintiff

44.    On May 29, 2018, at approximately 9:45 p.m., Plaintiff was alone

lawfully operating a 2012 Nissan Altima on Fulton Avenue in

Hempstead, New York.

45.    Plaintiff had just finished shopping at the Family Dollar store.

46.    While driving on Fulton Street, Plaintiff noticed a dark colored

vehicle tailgating him, possibly a Kia sport utility vehicle

("SUV").

47.    Plaintiff made a right turn on Courtenay Road in Hempstead.

48.    The Kia SUV followed him.

49.    Plaintiff pulled to the side hoping that the Kia SUV would

simply pass by.

50.   Instead, the Kia SUV pulled up close behind Plaintiff but did not employ any police lights or sirens.

51.   Two White males wearing baseball style caps exited the Kia SUV.

52.   Plaintiff noticed one male had a badge around his neck.

53.   The male with the badge approached Plaintiff's vehicle on the driver's side and the other man approached the passenger side.

54.   These men are alleged to be NCPD, BSO officers.

55.   The officer on the driver's side asked Plaintiff, "Where you in a rush to?", and demanded that Plaintiff produce his driver's license and vehicle registration.

56.   The officer on the passenger side had a flashlight which he utilized to look into the vehicle for other occupants.

57.   Plaintiff momentarily had difficulty producing his wallet because it was tucked into his baggy shorts.

58.   Plaintiff was nervous because he did not understand what was going on or why he was stopped.

59.  In attempting to comply with the officer's demands to produce his license and registration, Plaintiff reached into his pant pocket for his wallet. Simultaneously, the officer on the driver's side panicked and went for his firearm, as if Plaintiff was not complying as directed. (Tr., 29 et. seq. and passim).

60.  The same officer, displaying aggressive mannerisms and demeanor, stated, "What the fuck are you doing --- get the fuck out of the car!"

61.  This same officer also placed his hand on his firearm and may have brandished it.

62.  That same officer further pulled the driver's side door open.

63.  Plaintiff got out of his car and the officer spun him around and pushed him up against the car.

64.  The officer grabbed Plaintiff's arm and placed it behind his back.

65.  Plaintiff said, "What are you doing, I have my license and registration?"

**b.    The Individual Defendants Inflict Summary and Excessive Force and Exhibit Racial Animus**

66.  One of the officers struck Plaintiff in the head with a hard object (believed to be a flashlight or butt end of a gun) thereby causing a deep a laceration which ultimately required nine surgical staples to close, thereby endangering Plaintiff's life.

67.  Upon being struck in the head Plaintiff fled in fear for his life.

68.  The police officers gave chase but Plaintiff was able to elude them temporarily by hiding in the nearby backyard of 100 Meadowbrook Road, Hempstead, New York.

69.  By this time additional officers joined in the chase and quickly located Plaintiff (in the backyard of 100 Meadowbrook Road, New York).

70.  A number of officers set upon Plaintiff and held him down expressing anger at having to give chase.

71.  Having been cornered, Plaintiff did not resist. Nonetheless, a number of officers (the Individual Defendants) placed their weight on him and one or more brandished electroshock weapons believed to be Tasers.

72. Tasers produce a visible and audible electric arc between two (2) electrodes.

73. The Individual Defendants placed the electrodes in contact with Plaintiff's body and engaged the trigger discharging a high voltage electric shock arc to inflict severe pain, burns, and muscular disruption.

74. The officers also continually struck Plaintiff about the head and body with fists and batons notwithstanding the fact Plaintiff was not resisting, pleading for his life, and that approximately four or more officers were involved in holding him down and could have easily placed him in handcuffs.

75. Plaintiff repeatedly screamed and begged the officers to stop but the officers kept employing the Tasers on his feet and ankles including removing Plaintiff's sneakers and socks and placing the electrodes directly on Plaintiff's bare feet.

76. Two (2) nearby civilian witnesses overheard Plaintiff screaming and begging for his life.

77. The use of the Tasers continued for approximately five (5) minutes in a manner well in excess of that needed to arrest the Plaintiff.

78. The Tasers were employed after Plaintiff was in handcuffs.

79. The force was excessive, amounting to what can only be described as torture, and inflicted in retaliation for Plaintiff running away from the officers as evidenced by the words utilized by the officers including, "You're never going to run again nigger." (Tr., 47 et. seq. and passim).[1]

80. The Individual Officers intended to substitute their own personal form of process (colloquially known as "street justice") for that offered by our court system.

81. This action denied Plaintiff his right to seek redress for his grievance because his rights and privileges were adjudicated in a summary fashion by the crude and brutal methods employed

---

[1] This is a reference to the transcript of the 50-h hearing.

by the defendants instead of in a civilized manner before a neutral party.

82. The officers also intended to impose summary and severe punishment, including the cruel and unusual forms inflicted, in place of those intended by our system of procedural and substantive safeguards and laws.

83. In light of the injuries inflicted, the officers summoned an ambulance.

### c.    Plaintiff's Injuries and Medical Treatment

84. The ambulance personnel reported that police "tried to put Plaintiff down" with resulting laceration to the head and multiple abrasions to the left shoulder, back and legs.

85. Plaintiff was transported by ambulance to Nassau University Medical Center ("NUMC").

86. Plaintiff stated to medical personnel at NUMC that he was struck in the head with a flashlight.

87.    The police officers stated that Plaintiff was also "dry tased.[2]"

88.    Plaintiff complained of a headache, facial pain, lower back pain, bilateral ankle pain and numbness, and left shoulder pain.

89.    Pain also radiated from his back down both legs.

90.    Plaintiff was treated for headache; facial, lower back, bilateral ankle and left shoulder pain, numbness, pain radiating down the back of both legs, abrasions, bleeding, bruising and lacerations.

91.    The head laceration (alleged by Plaintiff to have been inflicted by the flashlight or a gun) measured 3 c.m. by ½ c.m.

92.    Dr. Rankov determined the wound was the result of being struck by a "blunt object."

93.    The doctor treated it with 1% Lidocaine and "EPI" (epinephrine).

94.    He also sutured it with nine (9) surgical staples as referenced above.

---

[2] The officers likely meant placing the Taser directly in contact with the subject's body.

95.    Doctors also performed a CT Scan of Plaintiff's head, Cervical

       Spine, and Maxillofacial Region (face and jaw); and x-rayed his

       foot, ankle, Thoracolumbar Spine, hands, wrists, and shoulder.

96.    This testing showed no fractures.

97.    The final diagnosis was Contusion of Multiple Sites and

       Laceration of the Scalp.

98.    Emergency room personnel recommended application of anti-

       biotic ointment.

99.    NUMC released Plaintiff to the custody of the Individual

       Defendants on May 30, 2018 at 3:11 a.m.

   **d.    The Individual Defendants Fabricate Criminal Charges**

100.   On May 30, 2018, Officer Phaneuf filed a Felony Complaint in

       the Nassau County District Court charging Plaintiff with New

       York Penal Law §215.40 (Tampering With Physical Evidence)

       and §205.30 (Resisting Arrest).

101.   Officer Phaneuf alleged that Plaintiff (while still seated in his car) placed a clear plastic bag of suspected crack cocaine in his mouth while stating, "You ain't going to get me for this."

102.   Plaintiff denies having a clear plastic bag containing anything.

103.   He was simply on his way home from the Family Dollar store where he purchased bath tissue, a Mother's Day balloon, Sour Patch Kids watermelon flavored candy, Haribo peach flavored candy, Reese's Peanut Butter Cup mini candy, Ajax detergent, and baking soda.

### e.      The Individual Defendants Have No Evidence of Criminal Activity

104.   On Information and Belief, while Plaintiff was at NUMC, none of the Individual Defendants requested a CT scan or any other imaging procedure for Plaintiff's abdomen to determine the alleged location of the "crack cocaine" which Plaintiff was alleged to have swallowed.

105. None of the Individual Defendants took any steps to preserve alleged evidence of a package of "crack cocaine" in Plaintiff's abdomen by means of available police and/or court procedures.

106. None of the Individual Defendants requested a warrant, or any form of court process, to search the plaintiff's body with imaging procedures or other means.

### f.      Plaintiff Returns to the Hospital

107. Nassau released Plaintiff from custody on May 30, 2018.

108. Plaintiff immediately went to North Shore University Hospital (NSUH) the same day (May 30, 2018) arriving at approximately 7:00 p.m.

109. Plaintiff described his assault to NSUY personnel stating: "They whooped [m]y ass, tased me, and undressed me."

110. He indicated that the Individual Defendants claimed he swallowed a plastic bag of cocaine.

111. He thus expressly requested an x-ray to show there was no plastic bag in his digestive tract.

112.  Dr. Nicholas A. Bielawa ordered an x-ray of Plaintiff's abdomen to ascertain a "possible ingestion" which was performed at 10:14 to 10:16 p.m. on May 30, 2018.

113.  Dr. Barbara Podwall, the attending radiologist, reviewed the film and entered the following medical findings:

> There are no dilated loops of the small bowel.
> Bowel gas and stool identified throughout the colon and rectum.
> There is no free air visualized.
> Visualized lungs are clear.
>
> Impression:
>
> Nonobstructive bowel gas pattern.

114.  No foreign objects were noted.

115.  Plaintiff complained of headache, right hand and dorsal left foot numbness, back pain/injury, left shoulder abrasion, a head laceration, abrasions on his feet, upper and lower extremity pain, and pain radiating down the legs.

116.  Physical examination (by Dr. Phillip J. Underwood) noted multiple contusions, abrasions and scattered burn marks across

the back, left shoulder, left elbow, left forearm, left wrist and

hand as well as the right elbow, right forearm and right hand,

the right and left lower legs including knees, shins, ankles and

feet.

117.   The burns are alleged to be from the Taser(s).

### g.     Damages

118.   Plaintiff has suffered damage as a result of the violation of his

rights under the First, Fourth, Fifth, Eighth and Fourteenth

Amendments to the Constitution.

119.   Plaintiff's life was endangered when one of the Individual

Defendants struck him in the head with either the officer's

flashlight or butt end of his firearm.

120.   Plaintiff has permanent scarring on his body where the officers

struck him with hands, batons, another hard object (either a

flashlight or butt end of a gun as previously noted), and

employed the Taser(s).

121.  Plaintiff experienced, and will continue to experience, excruciating pain, suffering, extreme fear, humiliation, loss of freedom, inconvenience, and emotional trauma.

122.  Plaintiff had pre-existing medical problems with his back that were aggravated by the unlawful use of force.

123.  Plaintiff has expended, and will continue to expend, money for medical and psychological treatment.

124.  Plaintiff has suffered injuries which will diminish his ability to work and consequent lost wages.

125.  Plaintiff's damages and injuries are a direct and proximate result of the actions of the defendants.

## VI.    CAUSES OF ACTION

### COUNT 1

### §1983 Conspiracy

126.  Plaintiff repeats and re-alleges all prior paragraphs.

127.  Plaintiff asserts a §1983 Conspiracy claim against the Individual Defendants.

128.   The Individual Defendants, under color of law, conspired with one another to deprived Plaintiff of his rights under the Constitution, including the rights to be free from:

- the intentional use of unreasonable and excessive force;

- false arrest and imprisonment;

- malicious prosecution;

- unreasonable searches and seizures;

- denial of due process;

- denial of access to seek redress in the courts; and

- cruel and unusual punishments; and

129.   It was part of the Conspiracy that the Individual Defendants punish the Plaintiff in a summary fashion and later contrive reasons to stop and physically assault the Plaintiff.

130.   They did so intentionally.

131.   In furtherance of said Conspiracy, and in order to cover up the acts of brutality, the Individual Defendants engaged in the following overt acts:

- Falsely stopping, arresting and imprisoning the Plaintiff;

- Fabricating and contriving criminal charges lodged against Plaintiff;

- Although aware of the brutality, and the requirement to report it immediately, deliberately suppressed the truth;

- Submitting false police reports, statements and testimony to support fabricated charges lodged against the Plaintiff;

- Lying to authorities concerning the circumstances of Plaintiff being stopped in the first place; and

- On information and belief, meeting and telephoning one another following their actions, in an effort to share information concerning the circumstances of Plaintiff's seizure, beating and criminal charges, to present a united front in the face of any questioning.

132. The Individual Defendants' misconduct both directly and proximately caused the violation of Plaintiff's Constitutional rights, injuries, symptoms and damages.

133.   Plaintiff claims damages for the injuries set out above.

## COUNT 2

### §1983 – Unreasonable and Excessive Force

134.   Plaintiff repeats and re-alleges all prior paragraphs.

135.   The Individual Defendants, under color of law, deprived Plaintiff of the right to be free of unreasonable and excessive force.

136.   Plaintiff claims damages for the injuries set out above.

## COUNT 3

### §1983 – False Arrest and Imprisonment

137.   Plaintiff repeats and re-alleges all prior paragraphs.

138.   The Individual Defendants, under color of law, deprived Plaintiff of the right to be free from false arrest and imprisonment.

139.   Plaintiff claims damages for the injuries set out above.

## COUNT 4

### §1983 – Malicious Prosecution

140.    Plaintiff repeats and re-alleges all prior paragraphs.

141.    The Individual Defendants, under color of law, deprived Plaintiff of the right to be free from malicious prosecution.

142.    Plaintiff claims damages for the injuries set out above.

## COUNT 5

### §1983 – Unreasonable Search and Seizure

143.    Plaintiff repeats and re-alleges all prior paragraphs.

144.    The Individual Defendants, under color of law, deprived Plaintiff of the right to be free from unreasonable search and seizure.

145.    Plaintiff claims damages for the injuries set out above.

## COUNT 6

### §1983 – Denial of Due Process

146.    Plaintiff repeats and re-alleges all prior paragraphs.

147.    The Individual Defendants, under color of law, deprived Plaintiff the right of due process prior to any taking of liberty or property.

148.   Plaintiff claims damages for the injuries set out above.

## COUNT 7

### §1983 – Denial of Access to the Courts

149.   Plaintiff repeats and re-alleges all prior paragraphs.

150.   The Individual Defendants, under color of law, deprived Plaintiff of the right to be have access to the courts by means of petitioning for redress of his grievance(s).

151.   Plaintiff claims damages for the injuries set out above.

## COUNT 8

### §1983 – Cruel and Unusual Punishment

152.   Plaintiff repeats and re-alleges all prior paragraphs.

153.   The Individual Defendants, under color of law, deprived Plaintiff of the right to be free of cruel and unusual punishments.

154.   Plaintiff claims damages for the injuries set out above.

## COUNT 9

### §1983 - Failure to Intercede

155.   Plaintiff repeats and re-alleges all prior paragraphs.

156.   One or more of the Individual Defendants had opportunities to intercede on behalf of Plaintiff to prevent the use of unreasonable and excessive force but due to their Deliberate Indifference, declined or refused to do so.

157.   Plaintiff's damages and injuries are a direct and proximate result of the actions of the Failure to Intercede.

158.   Plaintiff claims damages for the injuries set out above.

## COUNT 10

### §1983 – Supervisory Liability

159.   Plaintiff repeats and re-alleges all prior paragraphs.

160.   One of the John Doe Individual Defendants, on information and belief, held supervisory power over other officers engaged in inflicting unreasonable and excessive force on the Plaintiff's person.

161.   This supervisory officer, on information and belief, had reason to know of the unreasonable and excessive nature of the force inflicted of the Plaintiff's person, but due to his/her Deliberate

Indifference, declined or refused to order that it cease immediately.

162. Plaintiff's damages and injuries are a direct and proximate result of the actions of the failure to stop Plaintiff's beating.

163. Plaintiff claims damages for the injuries set out above.

## COUNT 11

### §1983 – Municipal (Monell) Liability

164. Plaintiff repeats and re-alleges all prior paragraphs.

165. On information and belief, policy making officials of Nassau were aware that police citizen encounters such as the one set forth in this matter were likely to occur.

166. On information and belief, those same officials were aware that such encounters, when multiple officers are involved, will lead to situations were human nature can cause a mob or riot like form of behavior, which often results in unreasonable and excessive use of force being visited upon citizens.

167.  On information and belief, those same officials were aware of other instances of such unreasonable and excessive use of force.

168.  On information and belief, those same officials were aware that a failure to discipline and train its rank and file police officers with respect to police citizen encounters, of the type set out in this case, will lead to the use of unreasonable and excessive force.

169.  Nassau, on information and belief, failed to discipline and train the police officers actually involved in the police citizen encounter pertaining to Plaintiff.

170.  On information and belief, the failure to discipline and/or train is a custom and/or policy of Nassau.

171.  Such failures, on information and belief, constitute acts of Deliberate Indifference to the welfare of citizens such as Plaintiff.

172.   Plaintiff's damages and injuries are a direct and proximate result of the actions of the Deliberate Indifference of Nassau in failing to discipline and train its police officers.

173.  Plaintiff claims damages for the injuries set out above.

## COUNT 12

### §1985(3) - Conspiracy with Racial Animus

174.  Plaintiff repeats and re-alleges all prior paragraphs.

175.  The Individual Defendants, under color of law, conspired with each other to undertake a course of conduct to injure, oppress, threaten, and intimidate the Plaintiff in the free exercise and enjoyment of rights and privileges and equal protection secured to him by the Constitution.

176.  Racial *animus* motivated the Individual Defendants to injure, oppress, threaten, and intimidate the Plaintiff.

177.  The Individual Defendants' racial *animus* found expression in their insulting remarks made while inflicting unreasonable and excessive force upon the Plaintiff's person.

178.  If was a part of the Conspiracy for the Individual Defendants to brutally beat and torture the Plaintiff, and continue same, after his hands were cuffed behind his back.

179. In furtherance of said Conspiracy and order to cover up the acts of brutality, the Individual Defendants engaged in the following:

a.  Falsely arresting and imprisoning the Plaintiff;

b.  Fabricating and contriving criminal charges lodged against Plaintiff including that he swallowed a plastic bag of "crack-cocaine" in order to deny the NCPD the use of this "evidence."

c.  Although aware of the brutality, and the requirement to report it immediately, deliberately suppressed the truth;

d.  Submitting false police reports, statements and testimony to support fabricated charges lodged against the Plaintiff;

e.  Lying to authorities concerning the circumstances of Plaintiff being stopped in the first place; and

f.  On information and belief, meeting and telephoning one another following their actions, in an effort to share information concerning the circumstances of Plaintiff's

seizure, beating and criminal charges to present a united front

in the face of any questioning.

## COUNT 13.

### §1985(2) - Conspiracy to Impede State Justice

180. Plaintiff repeats and re-alleges all prior paragraphs.

181. The Individual Defendants conspired to impede the due course

of justice in New York State by summary administration of

justice in the brutal, unreasonable and excessive form set out

above.

182. Plaintiff's damages and injuries are a direct and proximate result

of the actions of the denial of justice.

183. Plaintiff claims damages for the injuries set out above.

## COUNT 14

### Pendant Claim – New York State Common Law Battery

184. Plaintiff repeats and re-alleges all prior paragraphs.

185. The Individual Defendants' actions intentionally caused a harmful or offensive contact with Plaintiff's person.

186. Plaintiff neither consented nor provoked the contact.

187. Plaintiff's damages and injuries are a direct and proximate result of the harmful or offensive contact.

188. Plaintiff claims damages for the injuries set out above.

## COUNT 15

## Pendant Claim – New York State False Arrest and False Imprisonment

189. Plaintiff repeats and re-alleges all prior paragraphs.

190. The Individual Defendants intentionally, wrongfully, unlawfully, and unjustifiably seized, detained, arrested, charged, and deprived Plaintiff of his liberty, and imprisoned him against his will.

191. At all relevant times, the Individual Defendants acted forcibly.

192. The defendants did not have a warrant.

193. The defendants did not have probable cause to believe a crime was committed.

194.   Plaintiff was aware of the confinement and arrest.

195.   Plaintiff's damages and injuries are a direct and proximate result

of the false imprisonment and arrest.

196.   Plaintiff claims damages for the injuries set out above.

## COUNT 16

## Pendant Claim – New York State Malicious Prosecution

197.   The Individual Defendants commenced a criminal proceeding

against the Plaintiff.

198.   On information and belief, the criminal proceeding will be

terminated in favor of the plaintiff.

199.   The Individual Defendants brought the proceeding out of actual

malice in order to cover-up the assault perpetrated upon

Plaintiff's person.

200.   Plaintiff's damages and injuries are a direct and proximate result

of the malicious prosecution.

201.   Plaintiff claims damages for the injuries set out above.

## COUNT 17

## Pendant Claim – New York State Intentional and Negligent Infliction of Emotional Distress

202.   Plaintiff repeats and re-alleges all prior paragraphs.

203.   The Individual Defendants intentionally and negligently engaged in extreme and outrageous conduct.

204.   This resulted in the intentional or negligent infliction of severe mental and emotional distress, including, but not limited to fear of death, shocking and dehumanizing conditions, and post-traumatic stress.

205.   When the emotional distress was inflicted, Plaintiff was located in the zone of danger as this is defined in New York State common law.

206.   Plaintiff's damages and injuries are a direct and proximate result of the intentional and negligent infliction of emotional distress.

207.   Plaintiff claims damages for the injuries set out above.

## COUNT 18

## Pendant Claim – Negligent Supervision

208.   Plaintiff repeats and re-alleges all prior paragraphs.

209.   At least one police officer present during Plaintiff's beating was

       of superior rank.

210.   That officer had an opportunity to intercede and put a stop to the

       unreasonable and excessive nature of the force utilized.

211.   That same officer had a duty to stop the force utilized but failed

       to do so.

212.   Plaintiff's damages and injuries are a direct and proximate result

       of this negligent supervision.

213.   Plaintiff claims damages for the injuries set out above.

## COUNT 19

### Pendant Claim – New York State *Respondeat Superior*

214.   Plaintiff repeats and re-alleges all prior paragraphs.

215.   The Individual Defendants were employees of Nassau and

       acting within the scope of said employment.

216.   Thus, under the doctrine of *Respondeat Superior*, Nassau is liable

for the tortious conduct (see Counts 14 to 18) of said Individual

Defendants.

**WHEREFORE**, the Plaintiff demands, on each Count, the following

Judgments in an amount to be determined upon trial of this case:

- Entry of Judgment against the Defendants referenced in each Count set forth above;

- Compensatory and Special Damages (past, present and future) in an amount sufficient to fully compensate the Plaintiff for his injuries, damages and losses;

- Exemplary (Punitive) Damages in an amount which will adequately punish the defendants for their actions and omissions;

- Liquidated Damages as allowed by law;

- Attorney's Fees as a result of the violation of the Plaintiff's civil rights under 42 U.S.C. §§1983 through 1988, including costs of this lawsuit, expert witness fees, witness fees, and deposition costs to be determined in a post-judgment proceeding pursuant to Rule 54(d)(2)(B);

- Pursuant to Rule 8(a)(3) a total monetary damage award (Compensatory, Liquidated, Special, and Exemplary, etc.) of $30,000.000.00;

- Pre-Judgment Interest as allowed by statute, precedent and Court Rule;

- An Injunction enjoining the defendants from further damage to the Plaintiff;

- Any Court Order needed for Plaintiff to be furnished with full relief; and

- Such other and further relief as this Court may deem just and proper.

## TRIAL BY JURY

Plaintiff hereby demands trial by jury on all issues pursuant to Federal Rule of Civil Procedure 38(b) which allows such a demand to be included in this Pleading.

Dated:        March 27, 2019

/s/William P. Perniciaro

William P. Perniciaro
Attorney for Plaintiff
84 New Dorp Plaza, Suite 205
Staten Island, NY  10308
Phone:        718-667-5000
Facsimile:  718-667-0798
Email:        wperni@msn.com

/s/ Robert M. Beecher

Robert M. Beecher
Attorney for Plaintiff
15 Barberry Lane
New Providence, NJ  07974
Phone:        908-771-0095
Cell:           908-347-4185
Email:         beechbob@comcast.net